U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

2020 SEP -9  PM 1: 37

CLERK
BY_____ᵁᵗʷ_____
DEPUTY CLERK

MICHAEL and NANCY VALENTE, on their
own behalf and as next friends of their child
Dominic;

PAUL and INGRID GALLO, on their own
behalf and as next friends of their child Lucy;
and

JOANNA and STEPHEN BUCKLEY, on
their own behalf and as next friends of their
children Carter and Hudson,

Plaintiffs,

v.

DANIEL M. FRENCH, in his official
capacity as Secretary of the Vermont Agency
of Education;

THE TWO RIVERS SUPERVISORY
UNION;

LAUREN FIERMAN, in her official capacity
as Superintendent of the Two Rivers
Supervisory Union;

THE GREATER RUTLAND
SUPERVISORY UNION;

CHRISTOPHER SELL, in his official
capacity as the Superintendent of the Greater
Rutland County Supervisory Union;

THE WINDSOR SOUTHEAST
SUPERVISORY UNION; and

DAVID BAKER, in his official capacity as
Superintendent of the Windsor Southeast
Supervisory Union,

Civil Action No. 5:20-cv-135

## PLAINTIFFS' COMPLAINT

-1-

JOHN CARROLL, in his official capacity as
Chair of the Vermont State Board of
Education,

JENNA O'FARRELL, in her official capacity
as Vice Chair of the Vermont State Board of
Education,

SABINA BROCHU, in her official capacity
as a member of the Vermont State Board of
Education,

KIM GLEASON, in her official capacity as a
member of the Vermont State Board of
Education,

KATHY LAVOIE, in her official capacity as
a member of the Vermont State Board of
Education,

WILLIAM MATHIS, in his official capacity
as a member of the Vermont State Board of
Education,

OLIVER OLSEN, in his official capacity as a
member of the Vermont State Board of
Education,

PETER PELTZ, in his official capacity as a
member of the Vermont State Board of
Education,

ANGELITA PENA, in her official capacity as
a member of the Vermont State Board of
Education,

JENNIFER DECK SAMUELSON, in her
official capacity as a member of the Vermont
State Board of Education.

Defendants.

## INTRODUCTION

1.      This is a federal civil rights action to vindicate the rights guaranteed to three Vermont families by the First Amendment's Free Exercise, Establishment, and Free Speech Clauses, and the Fourteenth Amendment's Equal Protection and Due Process Clauses.

2.      Vermont requires each school district to maintain its own public elementary and high schools. 16 V.S.A. § 821(a); 16 V.S.A. § 822(a). If a town's electorate so authorizes it, a school district may provide for the education of the students residing in the district by paying tuition (the "Tuition Benefit") to public schools operated by other school districts or to approved independent schools. 16 V.S.A. § 821(a)(1), (d); 16 V.S.A. § 822(a)(1).

3.      On their face, the Vermont statutes authorizing tuition payments to public and approved independent schools are religiously neutral, 16 V.S.A. § 821(a)(1), (d); 16 V.S.A. § 822(a)(1); 16 V.S.A. § 828, because both religious and nonreligious independent schools may be categorized as an "approved independent school" under Vermont law. 16 V.S.A. § 166.

4.      However, in 1999 the Vermont Supreme Court held that because Vermont's tuition-payment statutes contained "no restrictions that prevent the use of public money to fund religious education," they violate the Compelled Support Clause of the Vermont Constitution, Ch. 1, art. 3, to the extent they allow school districts to pay tuition to religious schools. *Chittenden Town Sch. Dist. v. Dep't of Educ.*, 738 A.2d 539, 563 (Vt. 1999).

5.      Since *Chittenden* was decided, Vermont has maintained a statewide policy that prohibits school districts from paying tuition to any religious school.

6.      Parents who reside in tuitioning school districts and who choose to enroll their children in otherwise qualified religious schools are denied the Tuition Benefit that is provided to their neighbors based solely on religion.

7.     Plaintiffs are parents who reside in tuitioning school districts and who have enrolled their children in otherwise qualified religious schools. Plaintiffs would like to use the Tuition Benefit that is available to their neighbors to pay for their children's tuition at their chosen religious schools.

8.     The religious schools chosen by Plaintiffs would be eligible to receive tuition from Plaintiffs' school districts if they were not religious. Plaintiffs are thus denied the Tuition Benefit solely because the schools they have chosen for their children are religious schools.

9.     Defendants are the Secretary of the Vermont Agency of Education, sued only in his official capacity, the school districts and the district superintendents, sued only in their official capacity, where Plaintiffs reside, and the members of the Vermont State Board of Education, in their official capacities.

10.     Defendants' denial of a generally available public benefit—tuition payments for secondary education—to Plaintiffs because their children attend religious schools violates the principle that the government must not discriminate against, or impose legal difficulties on, religious individuals or institutions simply because they are religious.

11.     Defendants' policy of denying tuition payments to families choosing otherwise qualified religious schools violates the Free Exercise, Establishment, and Free Speech Clauses of the First Amendment to the U.S. Constitution as well as the Fourteenth Amendment's Equal Protection and Due Process Clauses.

## PARTIES, JURISDICTION, AND VENUE

12.     Plaintiffs Michael and Nancy Valente are a married couple who live in Mount Holly, Vermont with their son, Dominic. The Valentes send Dominic to Mount St. Joseph

-4-

Academy, a Catholic school, because of its high-quality academics, smaller class sizes, accessible sports programs, and its location near their home.

13.      Plaintiffs Paul and Ingrid Gallo are a married couple who live in Rutland Town, Vermont with their daughter, Lucy. The Gallos send Lucy to Mount St. Joseph Academy, a Catholic school, because of its high-quality academics, traditional grading system, excellent sports programs, smaller class sizes, and to prepare her for college.

14.      Plaintiffs Steve and Joanna Buckley are a married couple who live in Hartland, Vermont with their children, Carter and Hudson. Both of their sons attend the New England Classical Academy ("NECA"), an independent Catholic school in Claremont, New Hampshire because the school's worldview aligns with their sincerely held religious beliefs and because of the school's high academic standards. Carter will be in ninth grade at NECA during the 2020–21 school year. Hudson will be in eighth grade at NECA during the 2020–21 school year.

15.      Defendant Daniel M. French is the Secretary of the Vermont Agency of Education (hereinafter "Agency"), where he is empowered to "[s]upervise and direct the execution of the laws relating to the public schools and ensure compliance." 16 V.S.A. § 212.

16.      Defendant French has the primary responsibility and practical ability to enforce the legal and regulatory requirements for Vermont's tuition-payment system, as well as the primary responsibility and practical ability to ensure that the Agency's regulations, policies, and powers are implemented in accordance with the U.S. Constitution.

17.      Defendant French is sued only in his official capacity as Secretary of the Vermont Agency of Education.

-5-

18.     Defendant Two Rivers Supervisory Union is a school district responsible for the education of students in the Vermont towns of Andover, Baltimore, Cavendish, Chester, Ludlow, and Mount Holly, where the Plaintiffs Michael and Nancy Valente reside.

19.     Defendant Two Rivers Supervisory Union is obligated to enforce the legal and regulatory requirements for Vermont's tuition-payment system within its jurisdiction and is obligated to exercise its authority and powers in accordance with the U.S. Constitution.

20.     Defendant Lauren Fierman is the Superintendent of the Two Rivers Supervisory Union.

21.     Defendant Fierman has the primary responsibility and practical ability to enforce the legal and regulatory requirements for Vermont's tuition-payment system within the boundaries of the Two Rivers Supervisory Union, as well as the primary responsibility and practical ability to ensure that the Two Rivers Supervisory Union's regulations, policies, and powers are implemented in accordance with the U.S. Constitution.

22.     Defendant Fierman is sued only in her official capacity as Superintendent of the Two Rivers Supervisory Union.

23.     Defendant Greater Rutland County Supervisory Union is a school district responsible for the education of students in Rutland Town, Vermont where the Plaintiffs Paul and Ingrid Gallo reside.

24.     Defendant Christopher Sell is the Superintendent of the Greater Rutland County Supervisory Union.

25.     Defendant Sell has the primary responsibility and practical ability to enforce the legal and regulatory requirements for Vermont's tuition-payment system within the boundaries of the Greater Rutland County Supervisory Union, as well as the primary responsibility and

-6-

practical ability to ensure that the Greater Rutland County Supervisory Union's regulations, policies, and powers are implemented in accordance with the U.S. Constitution.

26.     Defendant Sell is sued only in his official capacity as Superintendent of the Greater Rutland County Supervisory Union.

27.     Defendant Windsor Southeast Supervisory Union is a school district responsible for the education of students in the Vermont towns of Windsor, West Windsor, Weathersfield, and Hartland, where the Plaintiffs Steve and Joanna Buckley reside.

28.     Defendant Windsor Southeast Supervisory Union is obligated to enforce the legal and regulatory requirements for Vermont's tuition-payment system within its jurisdiction and is obligated to exercise its authority and powers in accordance with the U.S. Constitution.

29.     Defendant David Baker is the Superintendent of the Windsor Southeast Supervisory Union.

30.     Defendant Baker has the primary responsibility and practical ability to enforce the legal and regulatory requirements for Vermont's tuition-payment system within the boundaries of the Windsor Southeast Supervisory Union, as well as the primary responsibility and practical ability to ensure that the Windsor Southeast Supervisory Union's regulations, policies, and powers are implemented in accordance with the U.S. Constitution.

31.     Defendant Baker is sued only in his official capacity as Superintendent of the Windsor Southeast Supervisory Union.

32.     Defendant John Carroll is the Chair of the Vermont State Board of Education and is sued only in his official capacity. Vermont's "State Board of Education is responsible for the establishment, advancement, and evaluation of public education policy. The powers and duties of the Board include making regulations governing: attendance and records of attendance of all

-7-

pupils, standards for student performance, adult basic education programs, approval of independent schools, disbursement of funds, and equal access for all Vermont students to a quality education." https://education.vermont.gov/state-board-councils/state-board.

33.     Defendant Jenna O'Farrell is the Vice Chair of the Vermont State Board of Education and is sued only in her official capacity.

34.     Defendant Sabina Brochu is a member of the Vermont State Board of Education and is sued only in her official capacity.

35.     Defendant Kim Gleason is a member of the Vermont State Board of Education and is sued only in her official capacity.

36.     Defendant Kathy Lavoie is a member of the Vermont State Board of Education and is sued only in her official capacity.

37.     Defendant William Mathis is a member of the Vermont State Board of Education and is sued only in his official capacity.

38.     Defendant Oliver Olsen is a member of the Vermont State Board of Education and is sued only in his official capacity.

39.     Defendant Peter Peltz is a member of the Vermont State Board of Education and is sued only in his official capacity.

40.     Defendant Angelita Pena is a member of the Vermont State Board of Education and is sued only in her official capacity.

41.     Jennifer Deck Samuelson is a member of the Vermont State Board of Education and is sued only in her official capacity.

42.     The Defendant Board members have the responsibility and practical ability to
ensure that the Board's regulations, policies, and powers are implemented in accordance with the
U.S. Constitution.

43.     Plaintiffs' action, filed pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201(a)
and 2202, seeks a declaration that Defendants' enforcement of the policy prohibiting the Tuition
Benefit from being used to pay tuition to religious schools on the sole basis that they are
religious is unconstitutional on its face and as applied to Plaintiffs. Plaintiffs also seek an
injunction enjoining Defendants from denying the Tuition Benefit to them and their tuition-
eligible students on the sole basis that an otherwise eligible school is religious.

44.     This Court possesses jurisdiction over this action under 28 U.S.C. §§ 1331 and
1343(a)(3).

45.     Pursuant to 28 U.S.C. § 1391(b)(1) and (2), venue is proper in this judicial district
because Defendants reside within it and the events giving rise to Plaintiffs' claims occurred
within it.

## STATEMENT OF FACTS

46.     The Vermont General Assembly (hereinafter "Legislature") guarantees "all
Vermont children" the "right to public education." 16 V.S.A. § 1.

47.     Vermont ensures that guarantee by granting "each local school district [the
power] to adapt its educational program to local needs and desires," thereby ensuring that "all
Vermont children will be afforded educational opportunities that are substantially equal although
educational programs may vary from district to district." *Id.*

48.     The Legislature requires school districts to maintain at least one public high
school within the district for resident students. 16 V.S.A. § 821(a); 16 V.S.A. § 822(a).

49.     The Legislature exempts school districts from maintaining an approved public high school if:

      a.    "the electorate authorizes the school board to close an existing high school and to provide for the high school education of its students by paying tuition to a public high school, an approved independent high school, or an independent school meeting education quality standards, to be selected by the parents or guardians of the student, within or outside the State," 16 V.S.A. § 822(a); or

      b.    "the school district is organized to provide only elementary education for its students." 16 V.S.A. § 822(a)(2).

50.     The school districts in which Plaintiffs reside—Two Rivers Supervisory Union, Greater Rutland Supervisory Union, and Windsor Southeast Supervisory Union—are required to provide for the education of children residing within their jurisdictions from elementary through high school, unless exempted by statute. 16 V.S.A. § 821(a)(1); 16 V.S.A. § 822(a)(1).

51.     Because the Plaintiffs' school districts do not maintain a public high school, they must provide for the education of their students by paying tuition to either another district's public high school or to an approved independent (i.e., private) high school.[1] 16 V.S.A. § 822.

52.     For the State Board of Education ("State Board" or "Board") to grant a school status as an "approved independent school" pursuant to 16 V.S.A. § 166(b), a private school, *inter alia*, must:

      a.    Provide a minimum course of study [that] substantially complies with the State Board of Education's rules for approved independent schools;

---

[1] The Legislature does not authorize tuition payments to independent schools that are categorized as "recognized" schools. *See* 16 V.S.A. § 166(c).

b.      Possess the required financial capacity, trained faculty, and physical facilities and special services in accordance with state and federal laws and regulations.

53.     A private school may be granted the status of an approved independent school without State Board evaluation if it is accredited by a private, state, or regional agency recognized by the Board for accrediting purposes.

54.     A school district that chooses to pay tuition on behalf of students, instead of contracting with a single public or private school to educate its resident secondary students, does not determine which schools receive the tuition payments. Rather, each resident secondary student's parents are solely responsible for selecting the school their child will attend.

55.     This policy is known as tuitioning, and Vermont has practiced it since 1869. *See* https://www2.ed.gov/parents/schools/choice/educationoptions/report_pg21.html; 16 V.S.A. § 821, *et seq.*

56.     Because the school districts in which Plaintiffs reside do not maintain their own secondary school or contract with a single public or private school for the education of their resident secondary students, the school districts pay the tuition at the public school approved independent school that is selected by the resident secondary student's parents. 16 V.S.A. § 824(a) ("Tuition for high school students shall be paid by the school district in which the student is a resident.").

57.     The school districts are obligated to pay up to the legal tuition rate, established pursuant to 16 V.S.A. §§ 823–824, to the public or approved independent school that is selected by the resident secondary student's parents.

58.     As residents of tuitioning school districts, Plaintiffs are entitled to have their school districts pay up to the legal tuition rate to the public or approved private secondary school that they select for their child to attend.

59.     Plaintiff Valente and his wife have chosen to send their son to Mount St. Joseph Academy.

60.     Mount St. Joseph Academy is a private school.

61.     Mount St. Joseph Academy is accredited by the New England Association of Schools and Colleges. As such, it operates as and is classified by the State Board as meeting the requirements set forth in 16 V.S.A. § 166, to be an approved independent school.

62.     However, even though Mount St. Joseph Academy operates as an approved independent school under 16 V.S.A. § 166 it is ineligible for tuition purposes for the sole reason that it is a religious school.

63.     Upon information and belief, but for Vermont's policy of excluding religious schools from receiving tuition payment from school districts, Mount St. Joseph Academy would accept tuition payments from Plaintiff Valente's school district.

64.     Plaintiffs Steve and Joanna Buckley have chosen to send their sons to NECA.

65.     NECA is a private school.

66.     NECA is an approved independent school under New Hampshire laws and operates in accordance with that state's laws. As an approved school under New Hampshire laws, and upon information and belief, NECA satisfies the requirements to accept tuition payments from Vermont school districts. 16 V.S.A. § 828 (authorizing tuition payments to "an independent school in another state or country approved under the laws of that state or country"); Code of Vt. R. 22-000-004, R. 2224.3 ("In order for tuition to be paid to an independent school

-12-

in another state, the school must be accredited or approved by the host state or by an accredited

or approved by the host state [sic] or by an accrediting agency recognized by the State Board

reserves the right to refuse payment of tuition, if after review it determines any such school does

not provide the minimum course of study, is unsafe, or does not have faculty qualified by

training and experience in the instructional area in which they are assigned.").

67.     However, even though NECA operates as an approved school under New

Hampshire laws (thus satisfying Vermont's laws), it is ineligible for tuition purposes for the sole

reason that it is a religious school.

68.     Upon information and belief, but for Vermont's policy of excluding religious

schools from receiving tuition payment from school districts, NECA would accept tuition

payments from the Buckley Plaintiffs' school district.

69.     Prior to 1961, residents were able to choose religious schools for their children

and receive the tuition benefit. But in 1961, the Vermont Supreme Court held that when a school

district pays a student's tuition to a religious school, it violates the Establishment Clause of the

First Amendment to the United States Constitution. *See Swart v. S. Burlington Town Sch. Dist.*,

167 A.2d 514, 516–521 (Vt. 1961).

70.     In 1994, the Vermont Supreme Court revisited the ruling in *Swart* and held that

the Establishment Clause did not forbid a local school district from reimbursing tuition paid by

parents whose children attended a religious private school. *See Campbell v. Manchester Bd. of

Sch. Directors*, 641 A.2d 352, 357–361 (Vt. 1994).

71.     In 1999, the Vermont Supreme Court again ruled on the issue, this time holding

that reimbursing parents for tuition violated Article 3 of Vermont's state constitution unless there

were appropriate restrictions to prevent the funds from paying for religious worship or instruction. *See Chittenden Town Sch. Dist. v. Dep't of Educ.*, 738 A.2d 539 (Vt. 1999).

72.     The Establishment Clause of the First Amendment to the U.S. Constitution does not prohibit the inclusion of religious schools for tuitioning purposes. *Zelman v. Simmons-Harris*, 536 U.S. 639 (2002).

73.     The Free Exercise Clause of the First Amendment to the U.S. Constitution "condemns discrimination against religious schools and the families who attend them." *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, 2262 (2020). Further, "once a state decides [to subsidize private education], it cannot disqualify some private schools solely because they are religious." *Id.* at 2281.

74.     Because of Vermont's policy of religious exclusion, Plaintiffs cannot have tuition paid to either Mount St. Joseph Academy or NECA by their respective school districts on behalf of their children.

75.     Plaintiffs have asked their respective school districts, since the decision in *Espinoza* was issued, to pay the tuition at their respective religious schools.

76.     Plaintiffs Michael and Nancy Valente requested tuition for the 2019–2020 school year, prior to the decision in *Espinoza*. In October 2019, they were told in an e-mail from the superintendent of their school district that, "Our legal counsel has informed us that sending public funds to a religious school is a violation of Article 3 of the Vermont Constitution. This decision was made based on a court case from 1999, *Chittenden Town School District v. Department of Education*. In this case, the court found that if the Chittenden Town School District paid tuition to Mount St. Joseph's it would violate Article 3 of the Vermont Constitution."

77.     The Valentes have renewed their request for tuition to Mount St. Joseph Academy for this academic year and were told that the district would have to seek counsel from their lawyers before providing a response.

78.     Plaintiffs Paul and Ingrid Gallo requested tuition for their son to attend Mount St. Joseph this year and were told in August 2020 by their district that after checking with the Vermont Agency of Education, "per their legal guidance, this request is not permitted."

79.     Plaintiffs Steve and Joanna Buckley also requested tuition for the 2019–2020 school year. In October 2019, they were told in an email from Two Rivers Supervisory Union Superintendent David Baker that "the State Supreme Court ruled on the Constitutional prohibition of any taxpayer money contributed to an independent school that is foundationally religious." Baker pointed to the "religious artifacts" and "offering of Catholic Mass" as indications that the school could not receive tuition.

80.     The Buckleys again requested tuition from their local school district to pay for tuition at NECA for this upcoming school year and have not received an answer from the district.

81.     The Hartland School District website states that, "Students may also attend any non-religious private school and Hartland pays the tuition according to the statewide average, with the child's family paying the remaining tuition balance." *See* https://hartland.govoffice.com/?SEC=B2A9914E-B865-4A0B-8EB1-863DE337099A. The Town of Hartland, where the Buckley Plaintiffs reside, is one of the four towns that make up the Windsor Southeast Supervisory Union.

82.     Upon information and belief, the Agency of Education informs, advises, and instructs school districts that they may not pay tuition for residents' students to attend religious schools, even if those schools are otherwise qualified under Vermont's tuitioning laws.

-15-

83.     But for Vermont's policy of religious exclusion, Plaintiffs' respective school districts would have been required to pay tuition at their respective religious schools.

84.     Consequently, Plaintiffs have paid out-of-pocket, and must continue to pay out-of-pocket, tuition for their children to attend their respective religious schools.

85.     If Plaintiffs prevail in this case, they will renew their requests for tuition to attend their respective religious schools from their respective school districts, and their respective school districts will be required to pay such tuition, up to the statutorily authorized amount, to their otherwise qualified religious schools.

## COUNT I:  FREE EXERCISE OF RELIGION

86.     By this reference, Plaintiffs incorporate each and every allegation set forth in paragraphs 1 through 85 of this Complaint as though fully set forth herein.

87.     The Free Exercise Clause of the First Amendment to the U.S. Constitution provides, in relevant part, that "Congress shall make no law . . . prohibiting the free exercise" of religion.

88.     The Free Exercise Clause applies to states and their subdivisions and municipalities through the Fourteenth Amendment to the U.S. Constitution.

89.     The Free Exercise Clause protects against governmental hostility toward religion and requires neutrality toward religion.

90.     Vermont's policy of refusing to pay tuition to religious schools is not neutral with respect to religion and is not a law of general applicability. Rather, it discriminates against religion on its face, in that it allows parents whose school districts do not operate their own secondary schools, and instead pay tuition for their students to attend the public or private

-16-

secondary school of the parents' choice, to direct their children's tuition payments to private secular schools, but not to private religious schools.

91.    On its face and as applied to Plaintiffs, Vermont's policy conditions the receipt of a public benefit on the forgoing of religious convictions and free exercise rights.

92.    By denying tuition payments for children whose parents choose to send them to religious schools, Vermont forces parents either to forgo the receipt of an otherwise generally available benefit or to forgo their right and conviction to educate their children in a religious school.

93.    On its face and as applied to Plaintiffs, Vermont's policy discriminates and imposes special disabilities based on the religious status of: (a) the schools it bars from receiving tuition payments; and (b) the parents who choose religious schools for their otherwise tuition-eligible children.

94.    On its face and as applied to Plaintiffs, Vermont's policy substantially burdens the free exercise rights of parents whose conviction is to educate their child in a religious school.

95.    Defendants have no compelling, substantial, or even legitimate interest in denying tuition-eligible families private religious educational options while allowing them private secular options.

96.    Vermont's policy is not narrowly tailored to achieve, nor is it rationally related to, any governmental interest Defendants purport to have.

97.    The Establishment Clause of the U.S. Constitution does not prohibit school districts from making tuition payments to private religious schools chosen by Plaintiffs for their children or by the parents of other tuition-eligible students for their own children.

-17-

98.     A desire to achieve greater separation of church and state than is already ensured under the Establishment Clause of the U.S. Constitution cannot justify the exclusion of religious options in school districts that pay tuition for students who attend secular private schools.

99.     As applied to Plaintiffs, Vermont's policy violates the Free Exercise Clause of the First Amendment to the U.S. Constitution insofar as it denies religious options to tuition-eligible students and their parents.

## COUNT II:  ESTABLISHMENT OF RELIGION

100.     By this reference, Plaintiffs incorporate each and every allegation set forth in paragraphs 1 through 99 of this Complaint as though fully set forth herein.

101.     The Establishment Clause of the First Amendment to the U.S. Constitution provides, "Congress shall make no law respecting an establishment of religion."

102.     The Establishment Clause applies to states and their subdivisions and municipalities through the Fourteenth Amendment to the U.S. Constitution.

103.     The Establishment Clause requires neutrality toward religion.

104.     Accordingly, government may neither favor, nor disfavor, religion over non-religion or one religion over another.

105.     By denying tuition-eligible students and their parents religious options while allowing private secular options, Vermont's policy is, on its face and as applied to Plaintiffs, hostile toward and disapproving of religion.

106.     Defendants do not have a valid secular governmental purpose for denying tuition-eligible families religious educational options.

107.     On its face and as applied to Plaintiffs, Vermont's policy has the principal and primary effect of inhibiting religion, in that it denies tuition to children whose parents wish to

send them to a religious school. In this regard, it conditions receipt of an otherwise available public benefit on their willingness to forgo their religious convictions and their right to educate their children in a religious school. It thereby creates a substantial disincentive for parents to enroll their children in religious schools.

108.    One its face and as applied to Plaintiffs, Vermont's policy violates the Establishment Clause of the First Amendment to the U.S. Constitution insofar as it denies religious educational options to tuition-eligible students and their parents.

### COUNT III:  FREEDOM OF SPEECH

109.    By this reference, Plaintiffs incorporate each and every allegation set forth in paragraphs 1 through 108 of this Complaint as though fully set forth herein.

110.    The Free Speech Clause of the First Amendment to the U.S. Constitution provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech."

111.    The Free Speech Clause applies to states and their subdivisions and municipalities through the Fourteenth Amendment to the U.S. Constitution.

112.    The Free Speech Clause prohibits restrictions of speech that are based on content or viewpoint.

113.    Plaintiffs' decisions concerning, and making provision for, the education of their children are a form of expression and speech protected by the Free Speech Clause.

114.    On its face and as applied to Plaintiffs, Vermont's policy restricts expression and speech based on content and viewpoint because it denies tuition payments only for those children whose parents wish to send them to a religious school.

115.    Defendants have no compelling, substantial, or even legitimate interest in denying tuition-eligible families religious educational options while allowing private secular options.

116.    Vermont's policy is not narrowly tailored to achieve, nor is it rationally related to, any governmental interest Defendants purports to have.

117.    On its face and as applied to Plaintiffs, Vermont's policy violates the Free Speech Clause of the First Amendment to the U.S. Constitution insofar as it denies religious educational options to tuition-eligible students and their parents.

## COUNT IV:  EQUAL PROTECTION OF THE LAWS

118.    By this reference, Plaintiffs incorporate each and every allegation set forth in paragraphs 1 through 117 of this Complaint as though fully set forth herein.

119.    The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides, in relevant part, that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

120.    The Equal Protection Clause applies to states and their subdivisions and municipalities.

121.    The Equal Protection Clause prohibits the government from discriminating on the basis of religion, which is a suspect classification for equal protection purposes.

122.    By denying tuition-eligible students and their parents religious educational options while allowing private secular options, Vermont's policy discriminates, facially and as applied to Plaintiffs, on the basis of religion.

123.    Defendants have no compelling, substantial, or even legitimate interest in denying tuition-eligible students and their parents religious educational options while allowing private secular options.

-20-

124.    Vermont's policy is not narrowly tailored to achieve, nor is it rationally related to, any governmental interest Defendants purport to have.

125.    By excluding sectarian options, Vermont's policy makes it more difficult for one group of citizens than for all others to seek aid from the government.

126.    On its face and as applied to Plaintiffs, Vermont's policy discriminates on the basis of religion and therefore violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution insofar as it denies religious educational options to tuition-eligible students and their parents.

## COUNT V: DUE PROCESS

127.    By this reference, Plaintiffs incorporate each and every allegation set forth in paragraphs 1 through 126 of this Complaint as though fully set forth herein.

128.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides, in relevant part, that "No State shall . . . deprive any person of life, liberty, or property, without due process of law."

129.    The Due Process Clause applies to states and their subdivisions and municipalities.

130.    Among the liberties protected by the Due Process Clause is the liberty of parents to control and direct the education and upbringing of the children under their control. This liberty is fundamental.

131.    On its face and as applied to Plaintiffs, Vermont's policy conditions receipt of a public benefit on the Plaintiffs' willingness to sacrifice their liberty to control and direct the education and upbringing of their children by having to enroll them in either a public or a nonreligious private school to obtain the Tuition Benefit. By prohibiting tuition payments for

-21-

children whose parents choose to send them to religious schools, it forces parents to either forgo the benefit of tuition funds for their child or forgo their right to send their child to the school of their choice.

132.    Defendants have no compelling, substantial, or even legitimate interest in denying tuition-eligible students and their parents religious educational options while allowing private secular options.

133.    Vermont's policy is not narrowly tailored to achieve, nor is it rationally related to, any governmental interest Defendants purport to have.

134.    On its face and as applied to Plaintiffs, Vermont's policy violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution insofar as it denies religious educational options to tuition-eligible students and their parents.

### PRAYER FOR RELIEF

Plaintiffs respectfully request the following relief:

A.    A declaratory judgment by the Court that Vermont's policy of refusing to pay tuition to religious schools, on its face and as applied to Plaintiffs, violates the Free Exercise, Establishment, Free Speech, Equal Protection, and Due Process Clauses of First and Fourteenth Amendments to the U.S. Constitution insofar as its excludes religious schools from Vermont's system of paying tuition for students to attend private and public schools in school districts that do not operate a secondary school of their own;

B.    A preliminary and permanent injunction prohibiting Defendants from enforcing Vermont's policy or otherwise denying tuition-eligible students and their parents the option to receive tuition payments to attend otherwise-qualified religious schools;

C.    An award of attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988;

and

D.    Any other legal and equitable relief the Court may deem appropriate and just.

DATED:  September 9, 2020

Respectfully submitted,

Deborah T. Buchnam, Esq.
BUCKNAM LAW, PC
434 Eastman Road
Walden, VT  05836
Phone: (802) 748-5525, Ext. 101
Fax: (802) 748-4888
Email: DBucknam@vtlegalhelp.com

Timothy D. Keller*
INSTITUTE FOR JUSTICE
398 S. Mill Avenue, Suite 301
Tempe, AZ 85281
Telephone: (480) 557-8300
Fax: (480) 557-8315
Email: tkeller@ij.org

David Hodges**
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Telephone: (703) 682-9320
Fax: (703) 682-9321
Email: dhodges@ij.org

Attorneys for Plaintiffs

*A motion for admission *pro hac vice* has
been filed contemporaneously with the filing
of this complaint pursuant to Local Rule
83.1(b). Upon his admission, Mr. Keller will
serve as counsel of record.

\*\*A motion for admission *pro hac vice* will
be filed within the next week.